UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| SOUTHERN COAL CORPORATION | ) |
| *Plaintiff*, | ) Case No.: 7:14CV00030 |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| IEG PTY LTD. | ) |
| Unit 20, No. 2 Bishop Street | ) |
| St Peters N.S.W. 2044 | ) |
| Australia | ) |
| *and* | ) |
| GDL ENTERPRISES, INC. | ) |
| 2869 N. Swan Road | ) |
| Tucson, AZ 85712 | ) |
| *and* | ) |
| SENRAC TRANSPORTATION SERVICES, LTD., | ) |
| 235 Derrick Drive | ) |
| Humble, TX 77338 | ) |
| *Defendants*. | ) |

## COMPLAINT

Plaintiff Southern Coal Corporation ("Southern"), by and through in-house counsel, hereby files this Complaint against defendants IEG Pty Ltd. (hereinafter, "IEG"), GDL Enterprises, Inc. (hereinafter, "GDL") and SENRAC Transportation Services, Ltd. (hereinafter, "SENRAC"), and does also allege as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. Southern is a Delaware corporation with its principal place of business in Roanoke, Virginia.

2. IEG is an Australian entity with a principal place of business in Newtown (N.S.W.), Australia (the above St. Peters address was found on documentation regarding IEG).

3. GDL is a company formed in Arizona with its principal place of business in Arizona.

4. SENRAC is a corporation organized in the Commonwealth of Pennsylvania with its principal place of business in the State of Texas.

5. This Court has subject matter jurisdiction over this action because it is between citizens and residents of different states and because the amount in controversy, excluding interest and costs, exceeds the sum of $75,000.

6. GDL is subject to jurisdiction in this Court because the claims asserted herein arise, in material part, from GDL having conducted business in Virginia at all relevant times.

7. IEG is subject to jurisdiction in this Court because the claims asserted herein arise, in material part, from IEG having conducted business in Virginia at all relevant times.

8. SENRAC is subject to jurisdiction in this Court because the claims asserted herein arise, in material part, from SENRAC having conducted business in Virginia at all relevant times.

9. Venue is proper in this Court because a substantial part of the property that is the subject of this suit is located in this District. *See* 28 U.S.C. § 1391(b).

## COMMON FACTUAL ALLEGATIONS

10. Prior to the Fall of 2011, Southern acquired two P&H Mk II 2800 Shovels from GDL that were located in Australia. The serial numbers associated with the shovels are J22260 and J24020 (hereinafter collectively the "Shovels").

11. The purchase price for both Shovels exceeded USD$4 million.

12. The Shovels are designed for use in coal mining.

13. The Shovels' intended use would be for the extraction of coal by Southern and/or Southern's mine-operating affiliated entities.

14. As an entity in the coal production industry, Southern had very little experience in, and no expertise with, the type of international shipping necessary to transport the Shovels from Australia to the United States (where the plan was to use them, in part, for mining operations in Bishop, Virginia which is located in the Western District of Virginia). Accordingly, Southern advised GDL that as part of its purchase of the Shovels, GDL needed to line up shipping arrangements to ensure that the Shovels were safely transported to the United States. GDL agreed to do so.

15. GDL, upon information and belief, reached out to AAMAC Industries Pty. Ltd (hereinafter, "AAMAC"), an Australian entity, to help coordinate the dismantling of the Shovels and their transportation to the United States.

16. On behalf of Southern, GDL (and/or through AAMAC) engaged IEG to serve as the entity who would arrange for the actual shipping of Shovels and thus be the "shipper" of the Shovels. IEG agreed to and did communicate with actual vessel owners regarding shipment of the Shovels on behalf of Southern.

17. SENRAC agreed to work on behalf of Southern and, during the process of the shipping of the Shovels, SENRAC communicated with IEG, AAMAC and others with respect to shipment of the Shovels. SENRAC was to help facilitate the tracking of the Shovels as they were being shipped.

18. As part of the process, the Shovels were dismantled and various (but not all) parts were loaded into containers. In light of the type of materials at issue, it was critical to the safe passage of the Shovels that the parts not be exposed to various elements, such as those at

sea (for instance, rust may damage the metal on various parts, or electrical components); accordingly, certain Shovel components either needed to be shipped below deck or, if on a deck exposed to the elements (such as the "main" deck), be shielded with proper protective tarping.

19. The Shovels were loaded aboard the *BBC Rio Grande* in Newcastle, Australia. Upon information and belief, when the Shovels were loaded and secured onto the BBC Rio Grande, they were done so properly.

20. The BBC Rio Grande, however, did not carry the Shovels to the United States; rather, upon information and belief, ownership of said vessel changed mid-shipment. Instead, in November – December of 2011, the Shovels were unloaded at a port in Masan, South Korea. This diversion, as well as any other that may have occurred after the Shovels left Australia, was without Southern's prior knowledge, nor Southern's permission, consent or waiver.

21. On or about December 2011, after spending many weeks in Masan, Korea, the Shovels were loaded aboard the *MV Clipper Newhaven*.

22. On or about January 14-17, 2012, the Shovels were unloaded at the Newport News Marine Terminal in Newport News, Virginia.

23. A survey report prepared at the request of SENRAC, and dated April 22, 2012, states that "all cargo was stowed on the main deck of the MV Clipper Newhaven."

24. After their unloading in the United States, Southern learned that the Shovels were not in the condition they were in when Southern purchased them (in other words, as they were in Australia). Instead, the Shovels had many parts that were seriously damaged and

required extensive repair. Furthermore, numerous Shovel components and parts were missing.

25. As a result of the damage, Southern expended considerable resources to cause one of the Shovels to be operational, and that Shovel has been utilized for mining purposes in part in the Western District of Virginia. These expenditures are well in excess of $75,000.00.

26. The other of the two Shovels has been almost entirely repaired, and is presently located at a mine site in the Western District of Virginia. Expenditures to repair this shovel are well in excess of $75,000.00.

## COUNT I: BREACH OF CONTRACT (IEG)

27. Allegations set forth in each paragraph, *supra*, are hereby incorporated by reference and realleged as if set forth in full herein

28. IEG agreed to serve as the shipper of the Shovels on behalf of Southern for good and valid consideration.

29. Southern did not breach any material terms with its contractual understanding with IEG.

30. IEG breached its material term with Southern in that IEG failed to properly ensure safe passage of the Shovels from Australia to the United States without measurable damage to the Shovels.

31. As a result of this breach, Southern has been damaged in the form of having to pay to repair the Shovels.

32. As a result of this breach, Southern has been damaged in the form of a loss of use of the Shovels and, thus, their ability to mine coal for sale to the market.

## COUNT II: NEGLIGENCE (IEG)

33. Allegations set forth in each paragraph, *supra*, are hereby incorporated by reference and realleged as if set forth in full herein.

34. IEG had a duty to properly select, oversee, instruct, supervise and/or monitor the shipment of the Shovels from Australia to America.

35. IEG was negligent in that it breached its aforesaid duty(ies).

36. As a proximate cause of IEG's breach of their duty, the Shovels were damaged and/or parts were lost and Southern has been damaged in the form of having to pay to repair the Shovels.

37. As a result of this breach, Southern has been damaged in the form of a loss of use of the Shovels and, thus, their ability to mine coal for sale to the market.

### COUNT III: BREACH OF CONTRACT (GDL)

38. Allegations set forth in each paragraph, *supra*, are hereby incorporated by reference and realleged as if set forth in full herein

39. GDL agreed to arrange for the proper shipment of the Shovels on behalf of Southern for good and valid consideration.

40. Southern did not breach any material terms with its contractual understanding with GDL.

41. GDL breached a material term of its contract with Southern whereby GDL was to properly select, engage, supervise and/or instruct IEG (who, in turn, did not ensure the Shovels safe passage from Australia to the United States without measurable damage to the Shovels).

42. As a result of GDL's breach, the Shovels were damaged and/or parts were lost and Southern has been damaged in the form of having to pay to repair the Shovels.

43. As a result of this breach, Southern has been damaged in the form of a loss of use of the Shovels and, thus, their ability to mine coal for sale to the market.

## COUNT IV: NEGLIGENCE (GDL)

44. Allegations set forth in each paragraph, *supra*, are hereby incorporated by reference and realleged as if set forth in full herein

45. GDL had a duty to properly select, engage, supervise and/or instruct IEG (who, in turn, was to ensure safe passage of the Shovels from Australia to the United States without measurable damage to the Shovels).

46. GDL was negligent in that it breached its aforesaid duty(ies).

47. As a proximate cause of GDLs breach of their duty, the Shovels were damaged and/or parts were lost and Southern has been damaged in the form of having to pay to repair the Shovels.

48. As a proximate cause of GDLs breach of their duty, Southern has been damaged in the form of a loss of use of the Shovels and, thus, their ability to mine coal for sale to the market.

## COUNT V: BREACH OF CONTRACT (SENRAC)

49. Allegations set forth in each paragraph, *supra*, are hereby incorporated by reference and realleged as if set forth in full herein

50. SENRAC breached its duty to Southern to, on Southern's behalf, properly and timely observe the unloading, storage, reloading (and placement on the *MV Clipper Newhaven*) of the Shovels once they were unloaded/stored/reloaded in Masan, Korea.

51. As a result of this breach, Southern has been damaged in the form of having to pay to repair the Shovels.

52. As a result of this breach, Southern has been damaged in the form of a loss of use of the Shovels and, thus, their ability to mine coal for sale to the market.

## COUNT VI: NEGLIGENCE (SENRAC)

53. Allegations set forth in each paragraph, *supra*, are hereby incorporated by reference and realleged as if set forth in full herein

54. SENRAC had a duty to Southern to to, on Southern's behalf, properly and timely observe the unloading, storage, reloading (and placement on the *MV Clipper Newhaven*) of the Shovels once they were unloaded/stored/reloaded in Masan, Korea.

55. SENRAC was negligent in that it breached its aforesaid duty(ies).

56. As a proximate cause of SENRAC's breach, the Shovels were damaged and/or parts were lost and Southern has been damaged in the form of having to pay to repair the Shovels.

57. As a proximate cause of SENRAC's breach, Southern has been damaged in the form of a loss of use of the Shovels and, thus, their ability to mine coal for sale to the market.

WHEREFORE, Southern prays for an award of damages as follows as to each Count (with Defendants being jointly and/or severally liable but, however, with Southern's aggregate award not to exceed the total amount of (i) through (vi)): (i) no less than $1,101,345.00 to repair the Shovels, (ii) an amount to be established through discovery and/or at trial to compensate for the time for which the Shovels could not be utilized due to their damaged condition and the related loss of income, (iii) an amount representing sums Southern paid to (or invoiced for payment by) any Defendant relating to the Shovels, (iv) pre-judgment interest and costs (as well as post-judgment interest at the proper time), (v) an award of attorneys fees; and (vi) for such other relief as is deemed just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY**

Respectfully submitted,

Dated: January 21, 2014
Roanoke, Virginia

/s/ Allen W. Dudley, Jr.
Allen W. Dudley, Jr. (Va. State Bar No. 44013)
   *General Counsel for Litigation and Risk Management*
Dustin M. Deane (Va. State Bar No. 83804)
   *Associate General Counsel*
JAMES C. JUSTICE COMPANIES, INC. and AFFILIATED ENTITIES (including *Southern Coal Corporation*)
302 South Jefferson Street
Roanoke, Virginia 24011
Telephone: (540) 776-7890
Facsimile: (540) 776-7892
Email: aj.dudley@justicecorporation.com
*attorneys for Plaintiff Southern Coal Corporation*